## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 23-CR-00084 (APM)** |
| | : | |
| **v.** | : | |
| | : | |
| **KYLER BARD,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Kyler Bard, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the USCP's ability to perform their federally protected function to protect the U.S. Capitol building and its occupants.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP

attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.8 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### The Defendant's Participation in the January 6, 2021, Capitol Riot

8.      On the morning of January 6, 2021, the defendant, Kyler Bard, attended the "Stop the Steal" rally with other individuals near the Washington Monument and National Museum of African American History. After the rally, the defendant returned to his hotel for lunch and then made his way to the U.S. Capitol.

9.      The defendant knowingly entered and remained on restricted grounds surrounding the U.S. Capitol Building. As described below, the defendant was up against a line of police

officers outfitted in riot gear on the Upper West Terrace. The defendant took a picture of a rioter holding up and posing with a sign that read "Area Closed By Order of the Capitol Police Board," taken from the perimeter of the Capitol Grounds.

10.     By approximately 3:28 p.m., the defendant was standing on a ledge on the Upper West Terrace of the U.S. Capitol, where officers had formed a police line as a barrier between the Capitol building and the crowd.  At approximately 3:30 p.m., the defendant walked on top of the ledge and carried a megaphone, and shortly thereafter, another individual near the defendant charged the police line and pushed into the officers.

11.     In response to seeing this, the defendant yelled into the megaphone, "Move! Move! Move! We gotta push!  We gotta push! Let's go!  We gotta go! Let's go!" The defendant then turned directly toward the police line, and, as he yelled "let's push!" he took several steps raising his left arm and leaned forward shoving into the Officer. As the defendant made physical contact with Officer M.G., Officer M.G. raised his baton. At the time the defendant forcibly pushed into the police line, Officer M.G., was wearing full uniform including a riot helmet and standing with a group of similarly dressed officers. While he was in the restricted area, the defendant was exposed to chemical irritants and had to clear his eyes with water.

12.     For approximately 4 seconds, Bard confronted Officer M.G. by physically moving into the Officer.  Bard then lost balance and fell backwards to the ground.  While on the ground, Bard was pepper sprayed. As the defendant fell backwards, he yelled to the officers, "You're all a bunch of pieces of shit," and then he got up and ran away.

### *Elements of the Offenses and the Defendant's Acknowledgements*
### <u>Count One: Assaulting, Resisting, or Impeding Officers 18 U.S.C. § 111(a)(1)</u>

13.    The parties agree that Assault on a Federal Officer under 18 U.S.C. § 111(a)(1) requires the following elements:

a. The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer M.G. an officer from the Metropolitan Police Department.

b. The defendant did such acts forcibly.

c. The defendant did such acts voluntarily and intentionally.

d. Officer M.G. was assisting officers of the United States who were then engaged in the performance of their official duties.

e. The defendant made physical contact with Officer M.G.

14.    The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he voluntarily, intentionally, and forcibly assaulted Officer M.G., an officer from the Metropolitan Police Department, and that Officer M.G. was assisting officers of the United States who were then engaged in the performance of their official duties. The defendant further admits he made physical contact with Officer M.G.

## Count Two: Obstructing Officers During a Civil Disorder 18 U.S.C. § 231(a)(3)

15.    The parties agree that Obstructing Officers during a Civil Disorder under 18 U.S.C. § 231(a)(3) requires the following elements:

a. The defendant knowingly committed or attempted to commit an act to obstruct, impede, or interfere with Officer M.G.

b. At the time of the defendant's actual or attempted act, Officer M.G. was engaged in the lawful performance of his official duties incident to and during a civil disorder.

c. The civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

16.     The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he knowingly committed an act or attempted to commit an act with the intended purpose of obstructing, impeding, and interfering with Officer M.G. Officer M.G. was engaged in the lawful performance of his official duties incident to and during the civil disorder that occurred on January 6, 2024.

## Count Three: Entering or Remaining in a Restricted Building or Grounds 18 U.S.C. § 1752(a)(1)

17.     The parties agree that Entering or Remaining in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(1) requires the following elements:

   a. The defendant entered or remained in a restricted building or grounds without lawful authority to do so.

   b. The defendant did so knowingly.

18.     The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he knowingly entered and remained in restricted grounds without lawful authority to do so.

## Count Four: Disorderly or Disruptive Conduct in a Restricted Building or Grounds 18 U.S.C. § 1752(a)(2)

19.     The parties agree that Disorderly or Disruptive Conduct in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(2) requires the following elements:

   a. The defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

   b. The defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

   c. The defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

20.    The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he knowingly, and with the intent to impede and disrupt the orderly conduct of Government business and official functions, including the Joint Session of Congress, engaged in disorderly and disruptive conduct in the restricted U.S. Capitol grounds. The defendant admits that his conduct in fact disrupted the orderly conduct of Government business and official functions.

## Count Five: Engaging in Physical Violence in a Restricted Building or Grounds 18 U.S.C. § 1752(a)(4)

21.    The parties agree that Engaging in Physical Violence in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(4) requires the following elements:

    a.  The defendant engaged in an act of physical violence against a person in, or in proximity to, a restricted building or grounds.

    b.  The defendant did so knowingly.

22.    The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he knowingly engaged in an act of physical violence against Officer M.G. by assaulting Officer M.G., while knowingly in restricted grounds.

## Count Six: Act of Physical Violence at the Capitol Building or Grounds 40 U.S.C. § 5104(e)(2)(F)

23.    The parties agree that Physical Violence at the Capitol Building or Grounds under 40 U.S.C. § 5104(e)(2)(F) requires the following elements:

    a.  The defendant engaged in an act of physical violence within the Capitol Buildings or Grounds.

    b.  The defendant acted willfully and knowingly.

24.     The defendant knowingly and voluntarily admits to all the elements as set forth above.  Specifically, the defendant admits that he willfully and knowingly engaged in an act of physical violence, that is assaulting Officer M.G., on Capitol Grounds.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     *s/ Kyle R. Mirabelli*
        Kyle R. Mirabelli
        Assistant United States Attorney
        NY Bar No. 5663166
        Capitol Siege Section
        U.S. Attorney's Office
        District of Columbia
        Telephone No: (212) 252-7884
        Email Address: kyle.mirabelli@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Kyler Bard, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: _5/28/24_

Kyler Bard
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: _5/28/24_

Joseph Passanise
Attorney for Defendant