**AMIT P. MEHTA UNITED STATES DISTRICT COURT JUDGE**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No.: 1:23-cr-00084 |
| | ) | |
| KYLER JOSEPH BARD, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT KYLER JOSEPH BARD'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

The evolution of the United States Sentencing Guidelines, since its passage in 1984 and implementation in 1987, has gone from mandatory guideline sentencing to an advisory function that permits judicial discretion in sentencing. Broadly stated the change from mandatory guideline sentencing to individualized deferential treatment of district court sentencing determinations. This change reinvigorated judicial discretion in sentencing. *Apprendi v. New Jersey,* 528 U.S 1028, 120 S.Ct. 525 (2000) *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005, 2006) and *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004),

Although the Guidelines were initially styled as mandatory, the U.S. Supreme Court's 2005 decision in *United States v. Booker* that the Guidelines, as originally constituted, violated the Sixth Amendment right to trial by jury, and the remedy chosen was to excise those provisions of the law establishing the Guidelines as mandatory. After *Booker* and other Supreme Court cases, such as *Blakley v. Washington*, the Guidelines are now considered to be advisory only. Federal judges must calculate the guidelines and consider them when imposing a sentence, but are not required to issue sentences within the guidelines.

1

As the Court is aware, the change allows the Court to vary from guideline sentencing calculations by either reducing or exceeding the established guideline range.

Moreover, sentencing since the inception of guideline sentencing effectively removed the judiciary from exercising its discretion. Prior to the adoption of the sentencing guidelines the judiciary was at the center of sentencing decisions and, of course, now has returned discretionary sentencing to district courts. Viewed another way, we have replaced mandatory guideline sentencing with individualized sentencing by district courts under the theory that all defendants are not alike and possess unique properties requiring more knowledge and expertise that is best weighed by the judiciary.

Even the government's sentencing memorandum reveals significant factors that are different from Bard's case. For example, in its sentencing memorandum the government makes the statement "[D]ifferent district courts can and will sentence differently–differently from the Sentencing Guideline range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *United States v. Gardelinni,* 545 F.3d 1089, 1093 (D.C. Cir. 2008).

In *United States v. Coppola,* 671 F.3d 220. 254 (2nd Cir. 2012), a RICO prosecution cited by the government, it recognizes the standard of review applicable to a Fed. R. Evid. 401/403 challenge is highly deferential in recognition of the district court's superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice.

To compare *Coppola* to the facts of this case is inappropriate. Because of the vast differences in the factual array between *Coppola* and Bard's case. Coppola was a member of the *Genovese* crime family who can hardly be likened to Kyler Bard, a young man (25) with no

criminal history Thus, a circuit court of appeals will reverse an evidentiary ruling only for abuse of discretion, which it will identify only if the ruling was arbitrary and irrational.

In *United States v. Coppola*, 671 F.3d 220, 225 (2d Cir. 2012) the defendant participated in *Genovese* criminal activities. Here, any comparison between *Genovese* crimes and the approximately four to six second encounter with a police officer in this case just doesn't make sense. If anything, *Coppola* is more a testament to the need for individual sentencing given his unique individual qualities or lack thereof instead of the computer-like administration of sentencing as put forth in the original provisions of the Sentencing Guidelines.

Consequently, a closer look at sentencing factors is necessary to arrive at a sentence. In *Apprendi,* the court famously said: *We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.* See *Apprendi,* 530 U.S., at 481, 147 L. Ed. 2d 435, 120 S. Ct. 2348; *Williams* v. *New York,* 337 U.S. 241, 246, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949).

*United States v. Booker,* 543 U.S. 220, 233, 125 S. Ct. 738, 750 (2005).

In Booker, the United States Supreme Court invalidated both the statutory provision, 18 U.S.C.S. § 3553(b)(1), which made the Sentencing Guidelines mandatory, and 18 U.S.C.S. § 3742(e), which directed appellate courts to apply a de novo standard of review to departures from the guidelines. *Gall v. United States,* 552 U.S. 38, 40, 128 S. Ct. 586, 591 (2007).

As the Court is undoubtedly aware, the factors listed below are essential elements of fashioning a reasonable sentence:

The first factor is a broad command to consider the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The second factor requires the consideration of the general purposes of sentencing,

including: "the need for the sentence imposed-- "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; "(B) to afford adequate deterrence to criminal conduct; "(C) to protect the public from further crimes of the defendant; and "(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2). [8] The third factor pertains to "the kinds of sentences available," § 3553(a)(3); the fourth to the Sentencing Guidelines; the fifth to any relevant policy statement issued by the Sentencing Commission; the sixth to "the need to avoid unwarranted sentence disparities," § 3553(a)(6); and the seventh to "the need to provide restitution to any victim," § 3553(a)(7). Preceding this list is a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing described in the second factor. § 3553(a) (2000 ed., Supp. V). The fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process. *Gall v. United States,* 552 U.S. 38, 50 n.6, 128 S. Ct. 586, 596 (2007).

CONCLUSION

For all of the foregoing reasons, the Court should place little or slight weight on the government's sentencing memorandum.

RESPECTFULLY SUBMITTED,

_____/s/Joseph S. Passanise_____
JOSEPH S. PASSANISE, MO Bar #46119
Attorney for Defendant

WAMPLER & PASSANISE
Attorneys at Law
2974 E. Battlefield
Springfield, MO  65804
joe@deewampler.com
PH: (417)882-9300
FAX: (417)882-9310

**Certificate of Service**

I hereby certify that on the 11th day of November 2024, I electronically filed the foregoing with the U.S. District Court Clerk for the Eastern District of Missouri using the CM/ECF system which sent notification of such filing to U.S. Attorney, St. Louis, Missouri.

_____/s/Joseph Passanise_____
Joseph S. Passanise
Attorney at Law