UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | No. 23-cr-00084-APM |
| **v.** | * | |
| | * | |
| **KYLER BARD** | * | |

UNITED STATES' OPPOSITION TO
DEFENDANT'S MOTION FOR POST CONVICTION RELIEF

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this opposition to defendant Kyler Bard's "Motion for Post Conviction Relief Pursuant to Title 28 United States Code 2255 or Alternatively, Title 28, United States Code 2241," filed on January 28, 2025. ECF No. 65.

**OVERVIEW**

Defendant pled guilty to *inter alia* Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1), stemming from his conduct on January 6, 2021. On November 15, 2024, the Court sentenced defendant to an aggregate period of 12 months and one day of incarceration. Defendant ultimately received a pardon before he was scheduled to self-surrender to begin his term of incarceration. Now, defendant alleges that the implementation of his pardon unconstitutionally situates him in a different "class" of January 6th defendants. He seeks to vacate his conviction as a result.

The government respectfully opposes the motion. Procedurally, defendant does not meet the relevant custodial requirement. Defendant's motion also fails on the merits as he has not shown any constitutional violation occurred. This Court should summarily deny defendant's motion.

1

**FACTUAL AND PROCEDURAL HISTORY[1]**

On the morning of January 6, 2021, defendant Kyler Bard attended the "Stop the Steal" rally with other individuals near the Washington Monument and National Museum of African American History. After the rally, the defendant returned to his hotel for lunch and then made his way to the U.S. Capitol.

The defendant knowingly entered and remained on restricted grounds surrounding the U.S. Capitol Building. Specifically, defendant was up against a line of police officers outfitted in riot gear on the Upper West Terrace. The defendant took a picture of a rioter holding up and posing with a sign that read "Area Closed By Order of the Capitol Police Board," taken from the perimeter of the Capitol Grounds.

By approximately 3:28 p.m., defendant was standing on a ledge on the Upper West Terrace of the U.S. Capitol, where officers had formed a police line as a barrier between the Capitol building and the crowd. At approximately 3:30 p.m., defendant walked on top of the ledge and carried a megaphone, and shortly thereafter, another individual near defendant charged the police line and pushed into the officers.

In response to seeing this, defendant yelled into the megaphone, "Move! Move! Move! We gotta push! We gotta push! Let's go! We gotta go! Let's go!" Defendant then turned directly toward the police line, and, as he yelled "let's push!" he took several steps raising his left arm and leaned forward shoving into an officer. As defendant made physical contact with Officer M.G., Officer M.G. raised his baton. At the time defendant forcibly pushed into the police line, Officer M.G., was wearing full uniform including a riot helmet and standing with a group of similarly

---

[1] This section is based in part on the "Statement of Offense" filed on May 28, 2024. ECF No. 41. Defendant stipulated that the facts as described in that document formed the basis for his guilty plea. *Id*. at 1.

2

dressed officers. While he was in the restricted area, defendant was exposed to chemical irritants and had to clear his eyes with water.

For approximately 4 seconds, defendant confronted Officer M.G. by physically moving into the officer. Defendant then lost balance and fell backwards to the ground. While on the ground, defendant was pepper sprayed. As he fell backwards, defendant yelled to the officers, "You're all a bunch of pieces of shit," and then he got up and ran away.

Defendant pled guilty to every count in the indictment, which included: Assaulting, Resisting, or Impeding Certain Officers (in violation of 18 U.S.C. § 111(a)(1)); Civil Disorder (in violation of 18 U.S.C. § 231(a)(3)); Entering and Remaining in a Restricted Building or Grounds (in violation of 18 U.S.C. § 1752(a)(1)); Disorderly and Disruptive Conduct in a Restricted Building or Grounds (in violation of 18 U.S.C. § 1752(a)(2)); Engaging in Physical Violence in a Restricted Building or Grounds (in violation of 18 U.S.C. § 1752(a)(4)); and Act of Physical Violence in a Capitol Grounds or Buildings (in violation of 40 U.S.C. § 5104(e)(2)(F)). *See* ECF No. 17 (Indictment), No. 41 (Statement of Offense), and No. 57 (Amended Judgment in a Criminal Case).

On November 15, 2024, the Court sentenced defendant to an aggregate period of 12-months and one day of incarceration. ECF No. 55 (Judgment in a Criminal Case). Defendant was first scheduled to self-report to the Bureau of Prisons to begin his term of incarceration by January 15, 2025, but on January 8, 2025, the Court entered its minute order extending defendant's self-report date to February 14, 2025.

On January 20, 2025, defendant was granted a "full, complete and unconditional pardon" for his convictions "related to events that occurred at or near the United States Capitol on January 6, 2021." *See* Executive Order dated January 20, 2025, Granting Pardons and Commutation of

Sentences for Certain Offenses Relating to the Events at Or Near the United States Capitol on January 6, 2021. This Court recognized the pardon, and denied defendant's second request to delay his self-report date given that "Defendant is no longer required to serve any custodial sentence." *See* Minute Order, entered January 27, 2025 (denying ECF No. 64).

Defendant filed his instant "Motion for Post Conviction Relief Pursuant to Title 28 United States Code 2255 or Alternatively, Title 28, United States Code 2241," on January 28, 2025. ECF No. 65. The Court has ordered that the government respond to defendant's motion by November 18, 2025. The government now respectfully files this opposition.

## ARGUMENT

**I.    Defendant's Motion is Procedurally Barred.**

    **a.  Principles for Habeas Corpus Motions**

Under 28 U.S.C. § 2255, a defendant sentenced in federal court may move to vacate, set aside, or correct his sentence if the defendant believes the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack…." 28 U.S.C. § 2255. "It is settled that a § 2255 motion is not meant to be a substitute for a direct appeal and that 'it does not encompass all claimed errors in conviction and sentencing.'" *United States v. Pollard*, 959 F.2d 1011, 1028 (D.C. Cir. 1992) (quoting *United States v. Addonizio*, 442 U.S. 178, 184-85 (1979)). Hence, relief on collateral attack is available only where there has been an error that is jurisdictional or constitutional, "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424,

428 (1962).² Accordingly, "in a § 2255 collateral challenge, [a defendant], in order to gain relief under *any* claim, is obliged to show a good deal more than would be sufficient on direct appeal from his sentence." *Pollard*, 959 F.2d at 1020 (emphasis in original).

Under 28 U.S.C. § 2241, a prisoner "in custody" may seek a writ of habeas corpus. 28 U.S.C. § 2241(c)(1)-(3). A defendant may rely upon 28 U.S.C. § 2241 to collaterally attack the legality of his conviction or sentence if – and only if – a motion under § 2255 proves "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e); *see Jones v. Hendrix*, 599 U.S. 465, 469 (2023) (involving "the interplay" between § 2241 and § 2255). Petitions brought under § 2241 must be filed in the district of the inmate's confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004).

A defendant must be "in custody" to file for habeas corpus relief under either statute. 28 U.S.C. § 2255(a); 28 U.S.C. § 2241(a), (c)(1)-(3); *see I.M. v. United States Customs & Border Prot.*, 67 F.4th 436, 440 (D.C. Cir. 2023) ("The text of § 2241 assumes that the writ would extend to a 'prisoner,' and a prisoner must of course be in 'custody.'"). While this "in custody" requirement is not limited to physical restraint, *see Maleng v. Cook*, 490 U.S. 488, 491 (1989) (*per curiam*), the "custody requirement of the habeas corpus statute is designed to preserve the writ of

---

² *See also United States v. Burwell*, 160 F. Supp. 3d 301, 308 (D.D.C. 2016) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)) ("The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal. '[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'"); *United States v. Bell*, 65 F. Supp. 3d 229, 231 (D.D.C. 2014) (stating that a defendant bears the burden of demonstrating entitlement to relief under § 2255).

habeas corpus as a remedy for severe restraints on individual liberty." *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973).[3]

"Upon completion of that sentence, the defendant no longer remains 'in custody' within the meaning of § 2255." *United States v. Williams*, 630 F. Supp. 2d 28, 30 (D.D.C. 2009). As the Supreme Court noted, while it has "very liberally construed the 'in custody' requirement for purposes of federal habeas, [it has] never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction." *Maleng*, 490 U.S. at 492; *see also Garlotte v. Fordice*, 515 U.S. 39, 45 (1995) (discussing *Maleng*).

### b. Defendant is Not in Custody

A defendant must be in custody at the time when their habeas petition is filed. *Maleng*, 490 U.S. at 490-91. Here, defendant filed his instant motion on January 28, 2025. Defendant was not "in custody" for purposes of either 28 U.S.C. § 2255 or 28 U.S.C. § 2241. On January 20, 2025, defendant was granted a "full, complete and unconditional pardon" for his convictions "related to events that occurred at or near the United States Capitol on January 6, 2021." *See* Executive Order dated January 20, 2025, Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at Or Near the United States Capitol on January 6, 2021. On January 27, 2025, this Court had already observed that "Defendant is no longer required to serve any custodial sentence." *See* Minute Order, entered Jan. 27, 2025 (denying ECF No. 64). The completion of defendant's sentence means that "defendant no longer remain[ed] 'in custody' within the meaning

---

[3] Illustrative forms of custody include probation, *United States v. Lopez*, 704 F.2d 1382, 1384 n.2 (5th Cir. 1983); parole, *Jones* v. Cunningham, 371 U.S. 236, 239-43 (1963); federally mandated supervised release, *United States v. Scruggs*, 691 F.3d 660, 662 n.1 (5th Cir. 2012) (collecting cases); release on personal recognizance pending trial, *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 300–01 (1984); and release on personal recognizance pending sentencing *Hensley*, 411 U.S. at 349–52.

of § 2255" when he filed his instant motion. *Williams*, 630 F. Supp. at 30. For the same reason, he was no longer "in custody" within the meaning of § 2241 when he filed the motion.

While defendant mentions the custody requirement (ECF No. 65, at 3), he does not argue that he meets the requirement. There is no evidence to conclude that defendant is suffering under such "severe restraints on individual liberty" to make him eligible for habeas corpus relief. *Hensley*, 411 U.S. at 351. Defendant fails to point to *any* specific constraint on his liberty that would justify a finding that he remains "in custody." Defendant's liberties are not being constrained by probation (*Lopez*, 704 F.2d at 1384 n.2), parole (*Jones*, 371 U.S. at 239-43), supervised release (*Scruggs*, 691 F.3d at 662 n.1), or any similar form of restraint imposed in his case. Therefore, this Court should summarily dismiss defendant's motion as he fails to meet the custodial requirement.

## II.     Defendant Fails to Prove a Violation of the Equal Protection Clause.

### a. Legal Principles

The Fifth Amendment guarantees the "due process of law." U.S. Const. Amend. V. This clause contains "within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013); *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954). The Fourteenth Amendment guarantees the "equal protection of the laws." U.S. Const. Amend. XIV. While the Fifth Amendment does not contain an equal protection clause, "it does forbid discrimination that is so unjustifiable as to be violative of due process…. [The Supreme Court's] approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975) (quotation and citations removed); *see also Adarand Constructors v. Pena*, 515 U.S. 200, 217 (1995) (collecting citations).

The equal protection clause only protects against "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *see also Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349-50 (1974) (collecting citations). The "Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996). Where a "law neither burdens a fundamental right nor targets a suspect class, [the Supreme Court] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Id*. There are "[c]ertain legislative classifications, however, [that] prompt heightened review. For example, laws that classify on the basis of race, alienage, or national origin trigger strict scrutiny and will pass constitutional muster only if they are suitably tailored to serve a compelling state interest." *United States v. Skrmetti*, 605 U.S. 495, 510 (2025) (quotation and citations omitted).

    **b. Defendant Fails to Demonstrate that Any Constitutional Violation Occurred.**

Defendant asks this Court to "set aside his guilty plea and conviction" because his alleged suffering is different than other similarly situated defendants in violation of the Equal Protection clause. Def. Mot. at 1. Defendant argues that the implementation of the pardon "had the effect of creating different classes" of defendants convicted of offenses related to the events on January 6, 2021. *Id*. at 2-3. According to defendant, these classes include the following: (1) defendants who have already been convicted and serving a sentence but were outside the jurisdiction of the Court to seek post-conviction relief; (2) defendants who have already been convicted and sentenced but were within the jurisdiction of the Court to seek post-conviction relief; and (3) defendants who have not been sentenced and had their prosecutions dismissed. *Id*. at 3.

While not directly stated by defendant, he appears to argue that the harm he suffers stems from the timing of his pardon. He complains that "some offenders received a pardon but continued to suffer from a felony conviction while others were relieved of the albatross of conviction…. Those who were lucky enough to not have been sentenced will enjoy a future without the menace of a lifetime of trying to overcome the burden of conviction, while others who have been adjudicated will suffer inordinately because of the eccentricities of time alone." *Id*. at 4. Defendant claims that "the distinctions between the identified classes exist without a difference or a rational basis," and as a result the Court should set aside his conviction. *Id*. at 4-5.

The government submits that the Court should summarily deny defendant's motion given the dearth of a cohesive legal argument and relevant legal authority. Critically, the scope of state action that defendant is challenging is unclear. While he argues that the implementation of the "pardons and commutations policy" had the effect of creating "different classes" of defendant (Def. Mot. at 3), the plain text of the document clearly does not create such classes. *See* Executive Order dated January 20, 2025 (granting a "full, complete and unconditional pardon to all other individuals convicted of offenses."). The timing of the pardon – as in, if a defendant was pre-conviction or post-conviction – certainly impacted each criminal case differently, but this temporal fact does not create "classes" of defendants. It is the simple reality that defendant received a pardon *after* he had pled guilty. This fact, with nothing more, cannot constitute state action. *See Lugar*, 457 U.S. at 924; *Jackson.*, 419 U.S. at 349-50.

Moreover, defendant has not claimed that any state action either "burdens a fundamental right [or] targets a suspect class." *Romer*, 517 U.S. at 631. Defendant invents various "classes of January 6th defendants," but these classes do not implicate any of the traditional classes who, if targeted by a law, would trigger a strict scrutiny review. *Skrmetti*, 605 U.S. at 510.

9

Given that defendant's motion should be summarily dismissed for lack of jurisdiction or, alternatively, summarily denied for the reasons above, we do not engage in lengthy equal protection analysis here. We do, however, respectfully request the opportunity to more extensively brief the merits of defendant's claim if the Court finds that his motion is properly before the Court and the Court may benefit from additional discussion regarding the merits of the claim.

## CONCLUSION

The government respectfully submits that this Court should summarily dismiss defendant's instant motion for lack of jurisdiction, and in the alternative, summarily deny the motion as meritless.

        Respectfully submitted,

        JEANINE FERRIS PIRRO
        United States Attorney

        KACIE WESTON
        Chief, Special Proceedings Division
        M.D. Bar

        THOMAS STUTSMAN
        Deputy Chief, Special Proceedings Division
        D.C. Bar

By:    /s/*Christopher Macomber*
        Christopher Macomber
        Assistant United States Attorney
        Special Proceedings Division
        DC Bar No. 1671278
        601 D Street NW
        Washington, D.C.
        Christopher.Macomber@usdoj.gov

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY**, on October 24, 2025, I caused a copy of the foregoing motion to be filed electronically in the ECF system upon counsel of record.

>*/s/ Christopher Macomber*
>Christopher Macomber
>Assistant United States Attorney